NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 10 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MELANIE CRITES-BACHERT,

Plaintiff-Appellant,

v.

PROVIDENCE HEALTH & SERVICES - OREGON,

Defendant-Appellee.

No. 24-6664

D.C. No.
3:23-cv-01510-YY

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Submitted November 6, 2025[**]

Before: M. SMITH, NGUYEN, and H.A. THOMAS, Circuit Judges.

Plaintiff Melanie Crites-Bachert appeals from the district court's dismissal of

her complaint alleging that Defendant Providence Health & Services - Oregon

("Providence") violated her rights by implementing state and federal regulations

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

requiring healthcare personnel to receive COVID-19 vaccinations. [1] With jurisdiction under 28 U.S.C. § 1291, we review the district court's dismissal for failure to state a claim de novo, *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1068 (9th Cir. 2023), and now affirm.

The parties are familiar with the facts, so we do not recount them here except as necessary for context.

Crites-Bachert contends the district court erred in dismissing each of her eleven claims. We disagree. Her first through fourth, sixth, seventh, and eleventh causes of action are all constitutional claims brought under 42 U.S.C. § 1983. These claims fail as a matter of law because Providence is a private company, not a government actor. A private entity can only be held liable under § 1983 for conduct "fairly attributable to the State." *Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Here, Providence's conduct is not. The company's "compliance with generally applicable laws," such as state and federal vaccine mandates, is not "sufficient to convert private conduct into state action," even where noncompliance poses a risk of

---

[1] *See* Or. Admin. R. 333-019-0010 (June 29, 2021); Medicare and Medicaid Programs, Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555 (Nov. 5, 2021). Oregon's rule has since been repealed, Or. Admin. R. 333-019-0010 (Oct. 26, 2023), and the Centers for Medicare and Medicaid Services' regulation has been withdrawn, Medicare and Medicaid Programs; Policy and Regulatory Changes to the Omnibus COVID-19 Health Care Staff Vaccination Requirements, 88 Fed. Reg. 36485 (June 5, 2023).

"penalties." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1013–14 (9th Cir. 2020).

Relying on *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), Crites-Bachert responds that Providence "knew six ways from Sunday" that the vaccine policies were "invalid." In *Adickes*, the Supreme Court found triable disputes on plaintiff's constitutional claim against a private restaurant because she offered evidence that the state compelled the restaurant to "refuse[] her service" in furtherance of a "state-enforced custom of segregating the races." *Id.* at 170–71. But unlike in *Adickes*, where it was "virtually inconceivable" that the restaurant "could have acted [with] the innocent belief" that the state's segregation polices "were presumptively valid," *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 841 (9th Cir. 1999) (quoting *Lugar*, 457 U.S. at 954–55 (Powell, J., dissenting)), Crites-Bachert pleads no facts showing that Providence must have harbored such doubts about the vaccine policies as to compel Providence to ignore them. Instead, she discusses various off-point materials involving "nonconsensual medical experimentation" and the right to "refuse experimental medical products." These allegations do not support an inference that Providence knew that state and federal vaccine mandates, which conditioned privileges like employment on the receipt of a COVID-19 vaccine, were in fact "invalid"—such that Providence was obliged to disregard them.[2]

---

[2] That is particularly so in view of this country's long history of enforcing narrow vaccine mandates during a pandemic. *See, e.g.*, *Jacobson v. Massachusetts*, 197 U.S. 11, 12–14, 27, 39 (1905) (upholding municipal vaccine mandate during

Equally meritless is Crites-Bachert's fifth claim for an alleged violation of her alleged right to "informed consent" under the Food, Drug and Cosmetic Act ("FDCA"). This claim assumes the FDCA's Emergency Use Authorization ("EUA") provision, 21 U.S.C. § 360bbb-3, created an "implied private right of action." But as the district court correctly held, it did not. The FDCA's plain text disclaims private remedies and instead directs that "enforcement . . . of this chapter," which includes the EUA, "shall be by and in the name of the United States." 21 U.S.C. § 337(a). This statute offers "clear evidence that Congress intended" for the FDCA to "be enforced exclusively by the Federal Government." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001).

Crites-Bachert counters that the EUA postdates *Buckman* and provides no means for enforcing its "informed consent" term. But neither contention changes the calculus. If Congress wished to empower private citizens to enforce the EUA, when nestling that provision into a broad statute that explicitly disavowed private remedies, it was incumbent upon Congress to announce its departure. Yet Crites-

---

smallpox "epidemic," which imposed financial penalties on violators and was deemed "necessary for [] public health or safety"); *Biden v. Missouri*, 595 U.S. 87, 89–92 (2022) (upholding federal regulation requiring covered healthcare facilities to vaccinate employees against COVID-19); *Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1023, 1029, 1031 (9th Cir. 2025) (en banc) (applying *Jacobson* to uphold school district's policy, "which essentially required all of its employees to be fully vaccinated" against COVID-19, and explaining that such policies will be upheld so long as they have a "rational basis").

Bachert offers no evidence that it did.

The district court also correctly dismissed her eighth claim for breach of contract, as Crites-Bachert's complaint fails to identify any term that Providence supposedly breached. Rather, the complaint hyperlinks Providence's website, which contains multiple hyperlinks of its own to various lengthy sets of "Bylaws" and "Policies and Procedures," and then asserts in sweeping terms that Providence "breached" an unspecified "contract with Crites-Bachert by terminating her privileges at Providence." We decline to "scour the record in search" of whatever contract term, if any, Crites-Bachert had in mind. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

Nor does her theory that Providence "unilaterally modif[ied]" the parties' contract, without more, support a viable claim. As Providence points out, "unilateral changes are permissible" under Oregon law "when the contract allows [such] changes." *Associated Oregon Veterans v. Dep't of Veterans' Affs.*, 712 P.2d 103, 107 (Or. 1985). And in this case, one set of "Bylaws" that Crites-Bachert apparently concedes applies required professional staff to comply with all "qualifications, standards, requirements and responsibilities set forth in . . . policies and rules

governing the Hospital."[3] Crites-Bachert fails to explain how the vaccine mandates at issue are not qualifying "policies" or "rules."

Her ninth claim for breach of contract as a third-party beneficiary also falls short. Crites-Bachert did not demonstrate that Providence's "COVID-19 Vaccination Program Provider Agreement" with the Centers for Disease Control and Prevention conferred upon her an enforceable right as a third-party beneficiary. Even taking at face value her contention that she stood to benefit from this agreement, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries" who cannot "enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999). Crites-Bachert alleges no facts supporting such "clear intent."

Her tenth claim for tortious interference fares no better. Her complaint alleges no facts suggesting that Providence's compliance with presumptively valid state and federal vaccine policies was "improper" for purposes of Oregon's tortious-interference doctrine. *See McGanty v. Staudenraus*, 901 P.2d 841, 844 (Or. 1995) (stating elements of tortious interference). Nor does her appellate briefing offer any legal support for this theory.

---

[3] We may consider these terms under the incorporation-by-reference doctrine, as they "form[] the basis of [Crites-Bachert's] claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

**AFFIRMED.**