In re TRUCK–A–WAY, Debtor.

Hank Spacone, Plaintiff,

v.

Linda M. Burke, et al., Defendants.

No. CIV.S03–0112 FCD JFM.
Bankruptcy No. S 02–21699.

United States District Court,
E.D. California.

Sept. 10, 2003.

James R Kirby, II, Segal and Kirby, Sacramento, Gregory J. Hughes, Law Offices of Gregory J. Hughes, Roseville, CA, Matthew R. Eason, Eason and Tambornini, Mike K. Nakagawa, Stacey Heather Mounir, Nakagawa and Rico, Sacramento, CA, for Defendants.

### AMENDED MEMORANDUM AND ORDER [1]

DAMRELL, District Judge.

This matter is before the court on a motion by defendant Linda Burke ("defendant") to disqualify counsel for plaintiff trustee of the Truck–A–Way bankruptcy estate ("counsel"), and his law firm for violations of ethical and professional stan-

---

1. The court issues this amended version of a Memorandum and Order, filed August 13, 2003, solely for purposes of publication. The changes have no substantive effect on the disposition of the underlying motion.

dards. Counsel, through plaintiff trustee, opposes the motion. The court heard oral argument on July 11, 2003.

## BACKGROUND

On February 14, 2002, the corporation Truck–A–Way commenced a voluntary Chapter 11 bankruptcy proceeding in the Eastern District of California. On May 1, 2002, the bankruptcy proceeding was converted to a Chapter 7 bankruptcy proceeding.[2] Thereafter, Hank Spacone ("plaintiff trustee") was appointed as the Chapter 7 bankruptcy trustee to administer the assets of Truck–A–Way's bankruptcy estate.[3]

On February 19, 2003, counsel filed an "Ex Parte Application for Order Authorizing the Immediate Entry, Search and Seizure of Property" ("the ex parte application") in the bankruptcy court.[4] The proposed order submitted by counsel purportedly authorized the search and seizure of property allegedly belonging to the bankruptcy estate at a residence in Las Vegas, Nevada, a residence in Palm Desert, California, and unspecified storage lockers. (See Order, filed Bankr.E.D. Cal. Feb. 19, 2003, at 2.)

The attorney representing defendant did not receive notice of the ex parte application and the bankruptcy court heard argument without defendant's attorney present. According to counsel, the ex parte application was necessary because his past experience indicated (to him) that James Burke, defendant's husband, was likely to defy any court order by concealing assets and records belonging to the bankruptcy estate. (Decl. of Counsel ("Counsel Decl.") ¶ 6.)

The bankruptcy court granted the ex parte application without notice and signed counsel's proposed "Order Authorizing the Immediate Entry, Search and Seizure of Property" ("the order") without alteration. (See Order, filed Bankr.E.D. Cal. Feb. 19, 2003.)[5] The order allowed the trustees for the James Burke and Truck–A–Way bankruptcy estates, along with "their designated professionals," to "[i]mmediately enter" James Burke's residences in Las Vegas and Palm Desert and "[a]ny storage unit reflected in documents" at those locations, "picking or re-keying the door locks if necessary." (Id. at 2.) It also authorized searches of the premises, removal of items that were property of the Burke or Truck–A–Way bankruptcy estates, and searches of "the persons and personal effects ... of any person at the premises or who arrives at the premises while the search of the premises is being conducted." (Id.) The order further directed the "Office of the

---

2. Bankruptcy Adversary Case No. CV 02–21699–B–7.

3. On March 19, 2003, this court withdrew reference to the bankruptcy court because defendants are constitutionally entitled to a jury trial. (Mem. and Order, filed Mar. 19, 2003.) As a result, this case proceeds as a civil adversary proceeding.

4. The order was sought jointly by counsel for the trustee of the Truck–A–Way bankruptcy estate and counsel for the trustee of the James Burke bankruptcy estate ("In re Burke "). In re Burke is the personal bankruptcy of James Burke, the principal of Truck–A–Way and the husband of defendant Linda Burke.

5. During the hearing on the ex parte application, counsel represented to the bankruptcy court that he had already contacted the U.S. Marshal's district office in Las Vegas and was told that an Eastern District bankruptcy court order would be sufficient to allow deputy U.S. Marshals from that office to accompany him during a search of the Las Vegas property. (Rep. Tr. at 5:9–13.) However, this account conflicts with counsel's declaration filed with this court in which he claims that he contacted the U.S. Marshal's district office in Las Vegas prior to the February 19, 2003, bankruptcy court hearing, but "had not yet received any response" at the time of the bankruptcy court hearing. (Counsel Decl. ¶ 8.)

United States Marshal" to accompany the trustees on their searches "to use reasonable force necessary to effectuate this order." (*Id.* at 3.)

On the same day that the bankruptcy court issued the order, counsel flew to Las Vegas to lead the search of defendant's residence. (Counsel Decl. ¶ 9.) At 4:15 p.m. on February 19, 2003, counsel arrived at defendant's Las Vegas, Nevada, residence to conduct the search personally, along with an attorney representing the trustee for the Burke estate, and two armed deputy U.S. Marshals. (Decl. of Linda Burke ("Burke Decl."), in Ex. 7 to Def.'s Index, ¶ 3.) Counsel's search party arrived at defendant's home in several cars and blocked her driveway. (Burke Decl. ¶ 3–4.) Initially defendant refused to let the search party enter her home because she feared for the safety of her five-year old son and six-year old daughter, who were both present. (*Id.* ¶ 3.) Defendant eventually allowed the search party to enter the residence after the attorney representing the Burke trustee indicated that the bankruptcy court order authorized a search. (*Id.* ¶ 4.) [6] Apparently defendant's counsel arrived at some point during the search. (Counsel Decl. ¶ 9.)

Counsel searched defendant's bedroom, including dressers and found items "that suggested intimacy." (Suppl. Decl. of Counsel, filed Feb. 21, 2003.) Exceeding the "search and seizure" authorization, the attorney representing the trustee for the Burke estate also searched two vehicles and seized the titles to those vehicles. (Counsel Decl. ¶ 22.) Counsel also seized a key for a rented storage locker.[7] Later that day, he searched the locker and seized boxes of documents. (*Id.* ¶ 12.) Counsel removed the boxes and shipped them to his office in Sacramento, California. (*Id.* ¶ 13.)

Three of the seized boxes displayed labels indicating that the boxes contained documents from defendant's attorney. (*Id.* ¶ 10.) Counsel contacted defendant's attorney and requested a privilege log, but he initially received no response. Counsel then inspected the seized documents to determine for himself whether they contained privileged material. (*Id.* ¶ 16.) At some point during his retention of the documents, counsel also "segregated" these documents in order that he might "be able to prove fraudulent withholding of documents from the trustees." [8] (*Id.* ¶ 14.)

Defendant's attorney eventually submitted a list of documents for which he claimed privilege and specifically demanded that one of the manila file folders and the three boxes should be sealed immediately. (*Id.* ¶ 18.) Despite this assertion of privilege, counsel was "skeptical" because he felt that he was not given a sufficient explanation from defendant's attorney about the privileged character of the identified material. (*Id.*; Pl.'s Opp. Mot. Dis-

---

6. After defendant initially resisted the search party's demand to enter the residence, defendant claims that one of the deputy U.S. Marshals went to his car, adorned his bullet-proof vest, and "came back with his hand resting on his holstered pistol." (Burke Decl. ¶ 4.) Based on these events, defendant asserts that she did not willingly consent to a search of her home but permitted access "because of their statements that they were going to enter whether I agreed or not . . ." (*Id.* ¶ 7.)

7. Defendant Linda Burke initially said the key was for her mailbox. She later admitted that the key opened a storage locker after counsel asked a deputy U.S. Marshal to accompany defendant to her mailbox in order to test the key. (Counsel Decl. ¶ 11.) In counsel's opposition, this episode is offered as evidence that defendant lacks credibility.

8. Counsel does not specify what the process of segregation entailed. Presumably, documents can only be "segregated" if they are first examined to determine their contents.

qualify at 10–11.) As a result, counsel continued to retain the documents. Counsel subsequently turned over the seized boxes and documents to the United States Attorney's office. (Counsel Decl. ¶¶ 17, 19.) Based upon counsel's acts, defendant filed the instant motion to disqualify counsel and his law firm from further participation in this case.[9]

## STANDARD

Eastern District Local Rule 83–130(e) governs the conduct of attorneys admitted to practice before this court. The subsection provides in relevant part:

> **Standards of Professional Conduct.** Every member of the Bar of this Court … shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions of any Court applicable thereto, which are hereby adopted as standards of professional conduct in this Court …. No attorney admitted to practice before this Court shall engage in any conduct which *degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice.*

E.D. Cal. Local Rule 83–130(e) (emphasis added). Local Rule 11–110 authorizes the imposition of sanctions for non-compliance with the rules: "Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." E.D. Cal. Local Rule 11–110; *see United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir.1996) (affirming district court's inherent power to discipline attorneys for violations of district's local rules); *Visa U.S.A. v. First Data Corp.,* 241 F.Supp.2d 1100, 1103 (N.D.Cal.2003) ("The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers."). The right to disqualify counsel is within the inherent power of the district court. *Wunsch,* 84 F.3d at 1114; *Visa,* 241 F.Supp.2d at 1103.

## ANALYSIS

Counsel's actions in this case are unlike anything to come before this court. As explained in detail below, counsel acted in a manner that degraded the integrity of the court and interfered with the administration of justice.

### A. The *Ex Parte* Bankruptcy Court Order

Counsel employed *ex parte* procedures to obtain an order to search defendant's residences in Nevada and Southern California and seize property that he believed belonged to the bankruptcy estate. As he embarked on this effort, counsel never provided the bankruptcy court the statutory or caselaw authority, save reference to 11 U.S.C. § 105(a), to support a warrantless search and seizure.[10]

---

**9.** After briefing on this matter was closed, counsel filed a "motion to strike" asking the court to strike specific representations contained in defendant's reply. Counsel's motion is DENIED as improper, untimely, and, in any event, the court's ruling does not rely upon the material counsel seeks to strike.

**10.** Counsel also failed to inform the bankruptcy court that his requested order likely ex-

ceeded the court's jurisdiction. 11 U.S.C. § 105(a) of the Bankruptcy Code provides in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). According to the *ex parte* application, the failure of James Burke to comply with earlier bankruptcy court orders justified the warrantless forced

### 1. The Fourth Amendment

The Fourth Amendment unequivocally protects the right of "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. One would think a basic understanding of the Fourth Amendment would curb the unbridled enthusiasm of counsel in his quest for assets. Unfortunately, the Constitution prompted not a pause.

In direct contravention of the Fourth Amendment, counsel sought a "search and seizure order" from an Eastern District of California bankruptcy judge authorizing: (1) the forced entry, if necessary, into defendant's residence in Las Vegas, Nevada, (2) the seizure of unspecified property in the residence that allegedly belonged to the bankruptcy estate, (3) the "picking or re-keying the door locks" of the residence, (4) searches of "the persons and personal effects ... of *any person* at the premises or who arrives at the premises while the search of the premises is being conducted," and (5) the use of armed deputy U.S. Marshals "to use reasonable force to effectuate the order." (*See* Order, filed Bankr. E.D. Cal. Feb. 19, 2003 at 2–3) (emphasis added.) Even if counsel was a federal law enforcement officer, the Fourth Amendment strictly forbids such conduct absent certain strictures including an appropriate affidavit supporting a finding of probable cause by an appropriate judicial officer that there is evidence of crimes, contraband, or criminal instrumentalities. Fed.

R.Crim.P. 41. No such constitutional rubrics were observed. Indeed, counsel argues the righteous pursuit of allegedly hidden assets by a trustee under 11 U.S.C. § 105(a), alone, was sufficient justification. This proposition has no basis in the Constitution, federal statutes, or caselaw.

■■■■ Civil search warrants and bankruptcy court "search and seizure orders" are not exempted from the principles of the Fourth Amendment or the Federal Rules of Criminal Procedure. *See In re Application of Trustee in Bankruptcy,* 173 B.R. 341, 342 (N.D.Ohio 1994) (finding that bankruptcy trustee could not obtain a civil search warrant because he had no "authority or responsibility for investigating and prosecuting alleged violations of the federal criminal law" under Rule 41 of Federal Rules of Criminal Procedure); *In re Benny,* 29 B.R. 754, 766 (N.D.Cal.1983) ("An individual facing bankruptcy must cooperate with the statutory scheme, to be sure. But he does not thereby automatically suffer a loss of important civil rights."); *see also Fuentes v. Shevin,* 407 U.S. 67, 93 n. 30, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("[A] search warrant is generally issued to serve a highly important governmental need—e.g., the apprehension and conviction of criminals—rather than the mere private advantage of a private party in an economic transaction."); *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (finding municipal statute lacked the traditional safeguards of the Fourth Amendment be-

---

entry and search of the Burke residence in Las Vegas, Nevada. (Counsel Decl. ¶ 6). However, counsel knew better because on October 7, 2002, the bankruptcy court held that its pre-judgment jurisdiction did not extend to assets outside of California. (Pre–Hearing Ruling, filed Bankr.E.D. Cal. Oct. 7, 2002, at 2–3); *see also Weinberg v. United States,* 126 F.2d 1004, 1006 (2d Cir.1942) ("With very few exceptions, United States *district judges*

possess no extraterritorial jurisdiction.") (emphasis added); *Application of Houlihan,* 31 F.R.D. 145, 148 (D.N.D.1962) (finding search warrant issued by state court judge of Cass County, North Dakota to be invalid for execution in Grand Forks County, North Dakota because of jurisdictional limitations imposed by Rule 41 of the Federal Rules of Criminal Procedure).

cause it permitted warrantless searches by city housing officials). While there may be a well-founded belief that the subject is hiding assets of the bankruptcy estate, counsel's professional responsibilities to the Fourth Amendment remain intact. The Fourth Amendment accords no exemption to the bankruptcy court or its trustee, nor shortcuts around probable cause, due process, jurisdiction, or Rule 41 of the Federal Rules of Criminal Procedure.

### 2. Rule 41 of the Federal Rules of Criminal Procedure

In the context of private residence searches, the Supreme Court has noted: "[O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara*, 387 U.S. at 528–29, 87 S.Ct. 1727. Rule 41 of the Federal Rules of Criminal Procedure requires an exacting procedure for the application and issuance of a search warrant.[11] Under Rule 41, a search warrant may only issue upon the affidavit of a federal law enforcement officer or an attorney for the government establishing probable cause of crimes, contraband, or criminal instrumentalities. Fed.R.Crim.P. 41(b)-(d). Further, the rule mandates that only a federal magistrate judge with authority in the district or a state judge in the district may issue a search warrant. *Id.* Finally, the warrant may only issue to search and seize persons or property within the district. Fed.R.Crim.P. 41(b).

Ignoring Rule 41, counsel argues that a bankruptcy judge, upon the application of an attorney for the trustee asserting the existence of concealed assets, has the authority to issue a warrantless order to "search and seize" persons and property beyond the district (presumably including persons and property anywhere in the United States). It is not surprising that a district court has found by implication that a bankruptcy judge does not possess such authority. *See In re Application of Trustee in Bankruptcy*, 173 B.R. 341 (N.D.Ohio 1994). In *In re Application*, the district court denied the application of a bankruptcy trustee for a search warrant to locate assets belonging to the bankruptcy estate. *In re Application*, 173 B.R. at 342. The district court held that Rule 41 did not permit a bankruptcy trustee to obtain a search warrant "because a Trustee in Bankruptcy is … neither a federal 'law enforcement officer' nor an 'attorney for the government.'" *Id.* The district court's well-reasoned rationale is particularly appropriate in explaining why counsel's conduct in this case was improper:

> In support of his request, the applicant asserts that assets lawfully belonging

---

**11.** All further references to "Rule" are to the Federal Rules of Criminal Procedure unless otherwise noted.

> Rule 41(b) provides in relevant part:
> At the request of a federal law enforcement officer or an attorney for the government … a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district …
> Fed.R.Crim.P. 41(b).

Permissible search warrants are narrowly circumscribed by the specific requirements of Rule 41. Under Rule 41, a search warrant may only be issued by an appropriate judicial official based upon an affidavit of a federal law enforcement officer or an attorney for the government that demonstrates probable cause to believe a property contains: "evidence of a crime," "contraband, fruits of crime," "property designed for use, intended for use, or used in committing a crime," or "a person to be arrested or a person who is unlawfully restrained." Fed.R.Crim.P. 41(c)(1)-(4).

to a bankruptcy estate are being secreted unlawfully by the debtors. To the extent that such allegation shows or undertakes to show that a violation of federal criminal law has occurred or is occurring, the responsibility for investigating and prosecuting such illegal activity reposes with the United States Attorney's Office and federal law enforcement agencies, such as the Federal Bureau of Investigation. Neither a private person nor an attorney acting on behalf of a party to litigation or otherwise involved in litigation has authority or responsibility for investigating and prosecuting alleged violations of the federal criminal law.

*Id.* Clearly the explicit requirements of Rule 41 reflect the exacting mandate of the Fourth Amendment and cannot be circumvented by the statutory structure created by the Bankruptcy Code. *See In re Application,* 173 B.R. at 342; *In re Benny,* 29 B.R. at 766. Thus, counsel's attempt to justify his violation of Rule 41 by relying upon 11 U.S.C. § 105(a) is without merit. *See In re Application,* 173 B.R. at 342; *In re Benny,* 29 B.R. at 766.

### 3. *In re Barman*

Even if counsel had never ventured beyond the confines of bankruptcy law, had he conducted basic bankruptcy caselaw research he would have found *In re Barman,* 252 B.R. 403 (Bankr.E.D.Mich.2000).[12] *In re Barman* held that the Fourth Amend-

ment applies to trustee searches and set forth (with improper latitude) a threshold standard for a trustee, after a *noticed* hearing, to obtain a bankruptcy court order allowing the "inspection" (not seizure) of a debtor's residence for assets belonging to the estate.[13] While counsel confesses he was unaware of *In re Barman,* he now argues that his efforts somehow complied with that case. This argument is without merit. (Pl.'s Opp. Mot. Disqualify at 27.)

*In re Barman* states that "[t]he sole purpose of an inspection order is *inspection.* If the trustee seeks to take actual possession of any property, presumably the trustee will follow the established procedures for such a seizure, which may involve an injunction." *In re Barman,* 252 B.R. at 418–19 (emphasis added). While the court strongly disagrees with *In re Barman's* interpretation of a bankruptcy court's authority under the Fourth Amendment, nevertheless, with knowledge of that decision counsel would have prevented much of his more egregious conduct.

### B. Search of the Residence, Vehicles, and Storage Units

As noted above, after obtaining the "search and seizure order," counsel flew to Las Vegas to personally conduct the search of defendant's residence. Counsel admits that he confronted defendant in front of her two young children accompa-

---

**12.** Counsel admitted during oral argument and in the declaration submitted in opposition to the present motion that he conducted no legal research before filing his *ex parte* application for the search and seizure order. (*See* Counsel Decl. ¶ 26.)

**13.** *In re Barman* is the only reported case that addresses whether a bankruptcy court possesses the authority to issue orders permitting the inspection of a debtor's residence to locate assets of the bankruptcy estate. *But see In re Application of Trustee in Bankruptcy,* 173

B.R. 341, 342 (N.D.Ohio 1994); *In re Benny,* 29 B.R. 754, 766 (N.D.Cal.1983) ("An individual facing bankruptcy must cooperate with the statutory scheme, to be sure. But he does not thereby automatically suffer a loss of important civil rights."). Because the sole issue before the court is counsel's conduct, the court does not rule on whether the type of orders approved by *In re Barman* are permissible under the Fourth Amendment or Rule 41 of the Federal Rules of Criminal Procedure.

nied by armed U.S. Marshals [14] and led the search of the residence which included defendant's bedroom where he uncovered items "that suggested intimacy." (Suppl. Decl. of Counsel, filed Feb. 21, 2003.) [15] Further, the search violated the express language of the order when defendant's vehicles were searched and titles to the vehicles were seized. (Counsel Decl. ¶ 22.) In addition, as discussed below, counsel seized documents likely subject to the attorney-client privilege. Counsel, once again, asserts the meritless argument that these actions were justified under 11 U.S.C. § 105(a) because certain property of the bankruptcy estate had yet to be turned over to the trustee.

### C. Seizure, Inspection, and Retention of Privileged Documents

Counsel's misconduct was further magnified by his seizure, inspection, and retention of documents likely to be protected by the attorney-client privilege. These documents were contained in three boxes with shipping labels addressed to defendant and James Burke from an attorney that counsel knew to be representing both parties. (Counsel Decl. ¶ 10.) Inside the boxes, counsel found a cover letter confirming that the documents were transmitted by the defendant's attorney. (*Id.*) After seizing and inspecting the documents, counsel shipped them to his office in Sacramento, California.[16] (*Id.* ¶ 13.)

■ Counsel now attempts to justify his retention of the documents by arguing that it was the duty of defendant's attorney to provide him with a privilege log before he could return any seized documents. This argument is specious because such logs are required when a party declines to comply with a lawful discovery request based upon the assertion of the attorney-client privilege. *See* Fed.R.Civ.P. 26(b)(5). Here, counsel seized likely privileged documents and then requested a log without any means available to defendant's attorney to determine which materials were seized.

After counsel initially received no answer to his request for a privilege log, he then decided to inspect the documents. Counsel suggests that his actions in this regard were justified because: (1) defendant's attorney was slow in responding to his requests for a privilege log, (2) he only looked for "about one or two minutes," and (3) the material consisted only of non-privileged pleadings. (Counsel Decl. ¶ 16.) None of counsel's arguments are availing and, in any event, could never justify his inspection of documents likely to be privileged.

### CONCLUSION

■ The court finds that counsel's conduct, as described above, degraded and impugned the integrity of the court and interfered with the administration of jus-

---

14. The court is concerned with the participation of deputy U.S. Marshals in this warrantless search and their apparent lack of understanding of the parameters of their authority.

15. Perhaps most disturbing is counsel's failure to demonstrate the slightest concern to this court regarding his personal forced entry into the home of a mother and her small children in order to rummage through her home and bedroom in search of assets of the bankruptcy estate.

16. Counsel's willful seizure, inspection, and retention of an adversary's privileged documents would, alone, support disqualification. *See generally State Compensation Ins. Fund v. WPS, Inc.*, 70 Cal.App.4th 644, 657, 82 Cal. Rptr.2d 799 (1999) ("[W]e do not rule out the possibility that in an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in the manner specified above, assuming other factors compel disqualification.").

tice.[17] Accordingly, the court exercises its inherent power to disqualify counsel and his law firm from further representing plaintiff trustee in this case. Accordingly, defendant's motion to disqualify is GRANTED.

IT IS SO ORDERED.

---

**17.** The court assumes that counsel's fervent belief that wrongdoing was afoot overcame his sense of professional responsibility. The court further assumes this conduct was an aberration. If not, such behavior must be addressed further by the court.