**In re ARCHDIOCESE OF MILWAUKEE, Debtor.**

**Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, Plaintiff,**

v.

**Official Committee of Unsecured Creditors, Defendant.**

**Official Committee of Unsecured Creditors, Counterclaimant,**

v.

**Archbishop Jerome E. Listecki, as Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust, Counterdefendant.**

**Bankruptcy No. 11–20059–SVK. Adversary No. 11–02459.**

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 17, 2013.

Bruce G. Arnold, Daryl L. Diesing, Francis H. LoCoco, Michael E. Gosman, Whyte Hirschboeck Dudek S.C., Milwaukee, WI, for Debtor.

Timothy F. Nixon, William E. Duffin, Godfrey & Kahn, S.C., Milwaukee, WI, for Plaintiff/Counterdefendant.

Linda S. Schmidt, Matthew M. Wuest, Godfrey & Kahn, S.C., Madison, WI, for Counterdefendant.

Albert Solochek, Jason R. Pilmaier, Howard, Solochek & Weber S.C., Milwaukee, WI, Gillian N. Brown, Pachulski Stang Ziehl & Jones LLP, Los Angeles, CA, James I. Stang, Kenneth H. Brown, Pachulski Stang Ziehl & Jones, San Francisco, CA, for Defendant/Counterclaimant.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

SUSAN V. KELLEY, Bankruptcy Judge.

On April 2, 2007, the Archdiocese of Milwaukee (the "Debtor") created the Milwaukee Catholic Cemetery Perpetual Care Trust (the "Trust" or the "Cemetery Trust") to provide for the perpetual care of the Debtor's cemetery property and grounds. In March 2008, the Debtor funded the Trust by transferring over $55 million to a Trust bank account at U.S. Bank. The Debtor filed a chapter 11 petition on January 4, 2011, and shortly thereafter, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). On January 13, 2012, the plaintiff, Archbishop Jerome E. Listecki (the "Archbishop"), as Trustee of the Trust, filed a five-count Amended Complaint against the Committee, which had been granted standing to defend, negotiate and settle the claims made concerning the Trust.

In the Amended Complaint, the Archbishop seeks a declaration that (1) the Trust is not property of the Debtor's bankruptcy estate, and (2) the funds held in the Trust are not property of the Debtor's bankruptcy estate. Count III of the Amended Complaint alleges that the Committee cannot use the Bankruptcy Code to make the Trust property of the estate because doing so would violate the Religious Freedom Restoration Act of 1993 (42 U.S.C. § 2000bb et seq.) ("RFRA") and the First Amendment to the United States Constitution. The Committee filed a Motion for Summary Judgment, seeking summary adjudication of Count III and the Committee's related Seventeenth, Twentieth and Twenty–Second affirmative defenses.

Does including the Trust assets in the bankruptcy estate substantially burden the Debtor's free exercise of religion in violation of RFRA, the First Amendment or both? To answer in the affirmative would compel the Court to reach the unprecedented finding that a Chapter 11 creditors' committee is the government. That is a leap of faith the Court will not make. The Court also easily concludes that the Bankruptcy Code is a neutral and generally applicable statute that does not target religion or religious conduct. Therefore, the Court will grant the Committee's Motion. This disposition does not necessarily mean that the Cemetery Trust assets will be available to pay the Debtor's creditors; the other Counts of the Complaint[1] and the Committee's Counterclaim remain to be decided.

*Procedural Background*

■ The parties filed briefs and supporting materials, and the Court held a hearing on January 11, 2013. The Archbishop stridently protested the Committee's failure to file a statement of proposed undisputed material facts.[2] But there can be no serious dispute about the facts necessary for the Court to decide this Motion. Whether RFRA applies to including Cemetery Trust assets in the Debtor's bankruptcy estate, and whether Bankruptcy Code provisions are neutral and generally applicable, are legal questions, not factual ones. Both parties confirmed at the hearing that the issues are purely ones of law. Under these circumstances, the Committee's failure to file a statement of proposed undisputed facts is harmless.[3]

The Committee advances three arguments: (1) RFRA is applicable only to suits to which the government is a party; (2) RFRA may not be applied to invalidate state law, such as Wisconsin fraudulent transfer law; and (3) application of neutral, generally applicable provisions of the Bankruptcy Code does not violate First Amendment free exercise claims.

### 1. *RFRA is Applicable Only to Suits Involving the Government*

■ RFRA forbids "government" from substantially burdening religious exercise unless the burden is narrowly tailored to serve a compelling governmental interest. 42 U.S.C. § 2000bb–1. RFRA defines the term "government" to include a "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb–2. The Committee hangs its hat on *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir.2006), in which the court rejected the Second Circuit's decision in *Hankins v. Lyght*, 441

1. Count I is a claim that the Trust assets are not property of the bankruptcy estate based on various theories of trust law. Count II is a claim that since the Trust *res* was never commingled, the *res* was not property of the estate; Count IV alleges that since the funds were not commingled at the time of the bankruptcy petition, the trust funds are not property of the estate; and Count V alleges that since the Archbishop can trace the funds in the Trust, the funds are not property of the estate.

2. This Court's Local Rules regarding summary judgment do not require the statement of undisputed facts, except possibly by refer-

ence to the District Court's Local Rules. Arguably, the District Court's summary judgment procedural rules are inconsistent with the Bankruptcy Court's rules, and do not apply. No pretrial order obligated the Committee to file the statement in this adversary proceeding, and the Court does not customarily require such statements, except as expressly stated in a pretrial order. As the Committee noted, the Debtor has filed several Motions for Summary Judgment in this case, and none has been accompanied by a statement of undisputed facts.

3. The Committee supported its Motion for Summary Judgment with an affidavit.

F.3d 96 (2d Cir.2006), and declared: "RFRA is applicable only to suits to which the government is a party." *Tomic,* 442 F.3d at 1042. The Archbishop counters that *Tomic's* pronouncement was mere dictum, but other courts of appeals have held that RFRA applies only to suits involving the government.

For example, in *General Conf. Corp. v. McGill,* 617 F.3d 402, 410 (6th Cir.2010), the court defined the issue as "whether RFRA applies only in suits against the government or also in suits by private parties seeking to enforce federal law against other private parties." Adopting the dissent in *Hankins* by then-Judge Sotomayor, the Sixth Circuit concluded that RFRA does not apply to suits between private parties for three reasons:

First, as discussed above, RFRA's text does not support the *Hankins* majority's interpretation. Second, the *Hankins* majority limited its holding to the application of RFRA vis-a-vis federal laws that can be enforced by private parties and the government. That case concerned an action under the ADEA by a clergyman who had been forced into retirement. The ADEA claim could have been brought by the EEOC, and the majority sought to avoid disparate application of the statute based on who brings discrimination charges. *Id.* There is no EEOC-like agency that can bring trademark-enforcement actions. Third, a different panel of the Second Circuit already has expressed "doubts about *Hankins's* determination that RFRA applies to actions between private parties." *Rweyemamu v. Cote,* 520 F.3d 198, 203 (2d Cir.2008). That panel stated that "we think the text of RFRA is plain," credited Judge Sotomayor's dissent, and concluded that RFRA should not apply to purely private disputes "regardless of whether the gov-

ernment is capable of enforcing the statute at issue." *Id.* at 203 n. 2.

*Id.* at 411.

The Ninth Circuit, too, has concluded that RFRA does not apply to suits between private parties. *See Worldwide Church of God v. Phila. Church of God, Inc.,* 227 F.3d 1110, 1121 (9th Cir.2000) ("It seems unlikely that the government action Congress envisioned in adopting RFRA included the protection of intellectual property rights against unauthorized appropriation."); *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 834, 837–43 (9th Cir.1999) (observing that Congress did not specify that RFRA applies to non-governmental actors, as it typically does when intending to regulate private parties, and holding that private parties could not be considered state actors under RFRA unless they acted jointly with government officials to violate free-exercise rights).

In *Sutton,* the defendant (a private hospital) would not hire the plaintiff who for religious reasons refused to provide a social security number as federal law required. The *Sutton* court thoroughly explored when a private party acts "under color of law" and therefore qualifies as a governmental actor for RFRA purposes. The court noted that Congress has used the phrase "under color of law" in other statutes, including 42 U.S.C. § 1983. *Id.* at 835–36; *see also Brownson v. Bogenschultz,* 966 F.Supp. 795, 797 (E.D.Wis. 1997) (stating that the required degree of government action under RFRA is analyzed under same standard as § 1983). The court concluded that in determining whether a person is liable under § 1983, the ultimate issue is whether the alleged infringement of federal rights is fairly attributable to the government. *Sutton,* 192 F.3d at 835 (citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)).

According to *Sutton*, the analysis starts with a presumption that private conduct does not constitute government action. Calling the circumstances under which a private party can act under color of law "rare," and noting that "something more" than simply enforcing a federal statute is required, the court identified four tests for identifying when a party acts under color of law: "(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Id.* at 835–36. The plaintiff seized on governmental compulsion, arguing that the government compelled the result by mandating that the hospital require the social security number. After a thorough review of the case law, the *Sutton* court rejected the argument, finding that mere application of a statute is insufficient: the government must provide a "nexus" for a private entity to be clothed with the garb of a governmental actor. Examples include government participation in the action via conspiracy, official cooperation with the action, or government enforcement and ratification of the private entity's action. *Id.* at 841. The Ninth Circuit's own decisions supplied similar illustrations:

> In summary, Ninth Circuit precedent does not suggest that governmental compulsion, without more, is sufficient to deem a truly private entity a governmental actor in the circumstances of this case. Instead, the plaintiff must establish some other nexus sufficient to make it fair to attribute liability to the private entity as a governmental actor. Typically, the nexus consists of some willful participation in a joint activity by the private entity and the government. Plaintiff here fails to allege any such nexus.

*Id.* at 843. The Archbishop argues that the court in *Sutton* "made clear it was not holding that, in all instances, a party could not bring a RFRA claim against a private entity." (Archbishop's Response Brief at 11). True, *Sutton* recognized the exceptions under which a private party can act "under color of law." But the court found no exception applicable, because the plaintiff failed to show that there was any "nexus to make it fair to attribute liability to the private entity as a government actor." *Id.*

No nexus was shown in *Sutton*, and no nexus has been shown here. The Archbishop has not alleged that the Committee is engaged with the government in a conspiracy, has not alleged any joint action and has not alleged that the government is officially cooperating with the Committee. Comprised of five individual creditors, the Committee merely seeks to apply provisions of the Bankruptcy Code and Wisconsin law so as to include property in the Debtor's bankruptcy estate. The Archbishop says that this property is needed to maintain Catholic cemeteries. The "government" is not involved here any more than it was involved in *Sutton*.

The Archbishop argues that the Committee is acting under color of law because the Committee was appointed by the U.S. Trustee, is subject to court approval, and has shades of judicial immunity. The Archbishop concedes that no court has ever held that a creditors' committee is the "government" based on these factors. He cites *Brownson v. Bogenschultz*, 966 F.Supp. 795, 798 (E.D.Wis.1997), but in *Brownson*, Judge Reynolds said: "Under the joint action theory, private defendants act under color of state law when they collaborate with a state official to deny the plaintiffs' rights. To transform a private defendant into a state actor under the joint action theory, the public and private actors must share a common and unconstitutional goal." (internal citations omitted). The Archbishop fails to explain how the Com-

mittee's performance of its functions in this bankruptcy case, or its immunity in performing them, translates to the Committee acting jointly with the federal government to accomplish a common goal, let alone an unconstitutional one.

The Archbishop also relies on *Taunt v. Barman (In re Barman)*, 252 B.R. 403 (Bankr.E.D.Mich.2000), but *Barman* is easily distinguishable. In *Barman,* the Chapter 7 trustee obtained an *ex parte* order and went with the U.S. Marshal to the debtor's residence to search for concealed assets. The debtor sought to suppress the resulting evidence because his Fourth Amendment rights had been violated. Noting that the Fourth Amendment only applies to abuses by the government, the court concluded that the trustee was acting under color of law. The court reached this conclusion not only because the U.S. Marshal had accompanied the trustee on the search, but also because of the trustee's status as a trustee, someone appointed and supervised by the U.S. Trustee, an official of the U.S. Department of Justice.

Initially, this Court rejects the *Barman* court's determination that the trustee's connection to the U.S. Trustee elevates the Chapter 7 trustee to government status. Other courts have declined to deem the trustee a governmental actor in various contexts. *See Cromelin v. United States*, 177 F.2d 275, 277 (5th Cir.1949) (trustee "is in no sense an agent or employee or officer of the United States."); *Wells v. United States*, 98 B.R. 806 (N.D.Ill.1989) ("For one thing, a trustee in bankruptcy has long been held not to be an agent of the United States."); *Spacone v. Burke (In re Truck–A–Way)*, 300 B.R. 31 (E.D.Cal.2003) (disagreeing with *Barman* and suggesting that no order should have been issued to the trustee precisely because the trustee is not a government attorney or law enforcement official).

Even if the *Barman* trustee did act under color of law in searching the debtor's residence with the U.S. Marshal, the facts in this case are different. The Committee, acting derivatively through the Debtor as debtor in possession, is defending a lawsuit concerning property of the bankruptcy estate. The U.S. Trustee does not supervise debtors in possession or creditors' committees in the same manner as Chapter 7 trustees. Section 586(a)(1) of Title 28 U.S.C. provides: "Each United States Trustee ... shall (1) establish, maintain, and *supervise* a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11." 28 U.S.C. § 586(a)(1) (emphasis supplied). Conversely, section 586(a)(3)(E) states that the U.S. Trustee's role is simply to "monitor" the creditors' committee. 28 U.S.C. § 586(a)(3)(E). "Supervising" implies some level of control over Chapter 7 trustees' actions, while "monitoring" suggests little more than observation of committee participation in Chapter 11 cases.

Finally, although the U.S. Trustee appointed the Committee, the Committee is not acting in concert with the U.S. Trustee or any government official in this adversary proceeding. The U.S. Trustee is not a party to this adversary proceeding, and no representative of the U.S. Trustee appeared at the hearing on the Motion for Summary Judgment. The Court also rejects the Archbishop's suggestion that this Court's enforcement of the Bankruptcy Code and supervision of this bankruptcy case makes the Committee a governmental actor for purposes of RFRA. Such a nexus would render virtually every participant in a bankruptcy case the government.

In summary, the Court concludes that the Committee is not the government and

is not acting under color of law as that phrase is used in RFRA. This conclusion is grounded on (1) the Seventh Circuit's statement in *Tomic,* and the other circuit court decisions concluding that RFRA does not apply in suits between private parties; (2) the "rare" circumstances under which a private party acts under color of law; (3) the failure of the Committee to satisfy any of the tests in *Sutton,* such as joint action or government compulsion; and (4) the lack of any precedent under which a creditors' committee has been found to be acting "under color of law" in defending or prosecuting an avoidance action suit in bankruptcy court. Therefore, RFRA does not apply to bar the Committee's claims or defenses in this adversary proceeding.

### 2. *RFRA May Not be Applied to Invalidate State Law*

■ Assuming it is necessary to reach the argument, the Court also agrees with the Committee that RFRA does not bar the claims here because the ultimate law to be applied is state law. The Supreme Court stated in *Cutter v. Wilkinson,* 544 U.S. 709, 715, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005): "In *City of Boerne,* this Court invalidated RFRA as applied to States and their subdivisions, holding that the Act exceeded Congress' remedial powers under the Fourteenth Amendment."[4] After *Boerne,* even assuming that RFRA applies to actions involving the federal government, RFRA clearly cannot be used to invalidate a state law.

■ Although a federal statute, 11 U.S.C. § 541, defines what is property of

the bankruptcy estate, the ultimate determination whether the Trust assets are included in the Debtor's estate is a question of state law. In *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court stated: "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Citing *Butner,* the court in *Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop),* 335 B.R. 842, 860 (Bankr.D.Or. 2005), questioned whether RFRA applied at all to an estate property determination in a diocesan bankruptcy.

In this adversary proceeding, Wisconsin trust law governs the validity of the Trust, and Wisconsin fraudulent transfer law governs whether transfers of the Debtor's property to the Trust are avoidable and recoverable by the Committee. The Court agrees with the Committee that these state laws cannot be invalidated by RFRA.

### 3. *Application of Neutral, Generally Applicable Provisions of the Bankruptcy Code do not Violate First Amendment Free Exercise Claims*

■ In *Employment Division v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court held that the Free Exercise Clause of the First Amendment ordinarily does not relieve a religious adherent from compliance with a neutral, generally applicable law. As applied to this case, the Court cannot

---

**4.** In a footnote, the Court added: "RFRA, Courts of Appeals have held, remains operative as to the Federal Government and federal territories and possessions. *See O'Bryan v. Bureau of Prisons,* 349 F.3d 399, 400–401 (7th Cir.2003); *Guam v. Guerrero,* 290 F.3d 1210,

1220–1222 (9th Cir.2002); *Kikumura v. Hurley,* 242 F.3d 950, 958–960 (10th Cir.2001); *In re Young,* 141 F.3d 854, 858–863 (8th Cir. 1998). This Court, however, has not had occasion to rule on the matter." *Id.*

relieve the Archbishop from the estate-defining provisions of the Bankruptcy Code if the Code is a neutral, generally applicable law. A law is neutral if its object is something other than the infringement or restriction of religious practices. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). A law is not generally applicable if it imposes burdens only on conduct motivated by religious belief in a selective manner. *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 631 (7th Cir.2007) (quoting *Lukumi,* 508 U.S. at 543, 113 S.Ct. 2217).

The Archbishop argues that the Bankruptcy Code is not a neutral, generally applicable law because the Code contains various exceptions and exemptions. But none of the examples the Archbishop cites is "targeted" at religion, nor is the object of the Bankruptcy Code directed at religion or religious practices. Rather, the provision at issue here—the provision that creates and defines the bankruptcy estate—advances one of the "overarching purposes" of the Bankruptcy Code: the protection of creditors. *Andrews v. Riggs Nat'l Bank (In re Andrews),* 80 F.3d 906, 909–910 (4th Cir.1996). This objective is "effectuated through statutory provisions that marshal and consolidate the debtor's assets into a broadly defined estate from which, in an equitable and orderly process, the debtor's unsatisfied obligations to creditors are paid to the extent possible." *Id.* The Code provisions and their underlying purpose have no connection whatsoever to religion and do not target religious activity.

Although there are exceptions to the statutory list of property includable in the bankruptcy estate, the exceptions are not directed at religion or conduct motivated by religious belief. For example, the estate does not include certain funds placed in education individual retirement accounts. 11 U.S.C. § 541(b)(5). Various conditions are attached to the college savings account exception, but none of them deals with religion. The statutory exception does not differentiate in any way between a savings account for a religious education or a secular education. The Archbishop fails to explain how this exception targets religion. The Court concludes that the purpose and effect of the Bankruptcy Code provisions at issue in this case are generally applicable and religion-neutral. Therefore, application of these provisions to the Archbishop and his Trust is not unconstitutional.

*Conclusion*

The Committee's Motion for Summary Judgment with respect to Count III of the Amended Complaint and the related affirmative defenses is granted. The Court will issue a separate order.